## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**GREGORY L. SOLLY,**

      **Plaintiff,**

                                      **Case No. 2:15-cv-956**
                                      **Judge Algenon L. Marbley**
      **v.**                              **Magistrate Judge Elizabeth P. Deavers**

**CYNTHIA MAUSSER,**
*et al.*,

      **Defendants.**

## <u>OPINION AND ORDER</u>

Plaintiff, Gregory L. Solly, a Caucasian inmate in state custody who is proceeding without the assistance of counsel, brings this civil rights action under 42 U.S.C. § 1983 for declaratory and injunctive relief against Gary Mohr, Director of the Ohio Department of Rehabilitation and Corrections; Cynthia Mausser, Chairperson of the Ohio Adult Parole Board ("OAPB"); and ten individual OAPB members (collectively, "Defendants"). This matter is before the Court for consideration of Defendants' Motion for Summary Judgment (ECF No. 67). For the reasons that follow, Defendants' Motion for Summary Judgment is **GRANTED**.

## I.

Plaintiff, a state inmate currently incarcerated at Allen Correctional Institution ("ACI"), was convicted in 1980 of the murder of a five-year old boy. (Affidavit of Brandon Allen, ECF No. 67-4, ¶ 4 ("Allen Affidavit").) Plaintiff is serving an indefinite sentence of fifteen years to life, with parole eligibility after serving fifteen years. (Affidavit of Andrew Imbrogno, ECF No. 67-1, ¶¶ 7–8 ("Imbrogno Affidavit").)

On August 8, 2013, the OAPB conducted a panel hearing to consider Plaintiff's release on parole. (Imbrogno Affidavit, ¶ 6; Fourth Amended Complaint, ECF No. 53, ¶ 9 ("Fourth Am. Compl.").)[1] Defendant Andrew Imbrogno served as the lead panel member during that hearing in which Plaintiff and Defendants OAPB members Ron Nelson, Jr., Richard Cholar Jr., R.F. Rauschenberg, Ellen Venters, and Trayce Thalheimer also participated. (Imbrogno Affidavit, ¶ 6; Fourth Am. Compl., ¶ 10.)

On September 30, 2013, Plaintiff was denied parole. (OAPB Decision and Minutes, ECF No. 67-3.) Plaintiff's next hearing was continued for ten years to August 1, 2023. (*Id.* at 1.) In reaching this decision, the OABP considered the following:

> The inmate is incarcerated for his role in the death of a male child. The inmate has completed several risk-relevant programs. The inmate recognizes the wrongfulness of his actions and is remorseful. However, this serious offense is aggravated by several of its characteristics, including its extreme callousness, its duration, and the vulnerability of the young victim. For that reason and after weighing all relevant factors, the Parole Board determines that the inmate is not suitable for release at this time.

(*Id.*) The OAPB therefore concluded as follows:

> There is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety, or that due to the serious nature of the crime, the release of the inmate would not further the interest of justice or be consistent with the welfare and security of society.

(*Id.*)

On March 18, 2015, Plaintiff filed his Complaint, alleging that during the parole interview, OAPB members asked him a variety of questions relating to the circumstances surrounding the crime for which he was convicted and also a number of questions concerning the civil suit he had filed in 1994. (ECF No. 3.) He also alleged that OAPB members made a

---

[1] The Fourth Amended Complaint is verified.

number of comments that reflected that they were relying on false information and denying him a meaningful and fair parole hearing.  (*Id*.)  Plaintiff further alleged that during the hearing and in subsequent correspondence, he inquired as to why African Americans with similar crimes and prison records were granted parole at higher ratios than Caucasian Americans, but that Defendants refused to respond.  (*Id*.)  According to Plaintiff, Defendants abused their discretion in denying his parole because they relied upon false information, retaliated against him for filing a civil suit, and applied stricter standards because he was Caucasian.  (*Id*.)  He asserted claims of retaliation, equal protection, due process, and separation of powers.  (*Id*.)  Plaintiff sought declaratory and injunctive relief.  (*Id*.)

On November 6, 2015, the Court dismissed Plaintiff's due-process and separation-of-powers claims.  (ECF No. 10.)  Thereafter, upon unopposed motions (ECF Nos. 21, 32, 41, 49), the Court granted Plaintiff leave to amend the Complaint on four occasions to clarify the identity of John Doe Defendants.  (ECF Nos. 28, 34, 42, 52.)  On November 4, 2016, Plaintiff filed the Fourth Amended Complaint, asserting claims of retaliation, equal protection, due process, and separation of powers.  (ECF No. 53.)  Plaintiff seeks declaratory and injunctive relief.  (*Id*.)  Defendants have filed a Motion for Summary Judgment on Plaintiff's claims (ECF No. 67), which Plaintiff opposes (ECF No. 73 ("Opposition")).  With the filing of Defendants' Reply (ECF No. 79 ("Reply")), this matter is ripe for resolution.

## II.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all

reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495–96 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

## III.

### A.    Due Process

Plaintiff brings his claims against Defendants under 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

Plaintiff first asserts a violation of his procedural due process rights under the Fourteenth Amendment to the United States Constitution relating to Defendants' consideration of his parole eligibility. (*See generally* Fourth Am. Compl.) Plaintiff, however, asserted a procedural due process claim in his original Complaint (ECF No. 3), which the Court previously considered and rejected (ECF Nos. 4, 10.) In dismissing this claim, the Court reasoned as follows:

> If a state statute vests complete discretion in the parole board to determine eligibility for parole, no liberty interest exists. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 464–65 (1989); *see also Jergens v. Ohio Dep't of Rehab. & Corr. Adult Parole Auth*., 492 F. App'x 567, 569-70 (6th Cir. 2012) (holding that because Ohio has a completely discretionary parole system, Ohio law creates no protected liberty interest in release from parole).

> Although inmates have no liberty interest in parole, the Ohio Supreme Court has held that inmates have a right to accurate parole records. *State ex rel. Keith v. Ohio Adult Parole Auth*., 24 N.E.3d 1132, 1137 (Ohio 2014) ("[I]n any parole determination involving indeterminate sentencing, the OAPA may not rely on information that it knows or has reason to know is inaccurate."). Therefore, "knowing reliance on false information in a parolee's file, which the Parole Authority has no discretion to do under state law, can constitute a due process violation." *Kinney v. Mohr*, No. 2:13-CV-1229, 2015 WL 1197812, at *4 (S.D. Ohio Mar. 16, 2015) (citing *Keith*, 24 N.E.3d at 1137 and Ohio Rev. Code § 2967.03). But although Plaintiff alleges that Defendants relied on false information in denying him a meaningful parole hearing, he does not describe the nature of the false information or how it was used against him. Such a "naked assertion[] devoid of further factual enhancement" is insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted); *see also Jergens*, 492 F. App'x at 571 n.5 (noting that a parole board's reliance on false information in the parole file could constitute a due-process violation but holding that "in this case, [the plaintiff's] nonspecific allegations of falsity simply fail to make out such a claim").

> In his Objection [to the Report and Recommendation (ECF No. 4)], Plaintiff cites *Wilkinson v. Dotson*, in which the Supreme Court held that constitutional challenges to parole-board procedures are cognizable under § 1983 as long as the action's success is not dependent on demonstrating the invalidity of confinement. 544 U.S. 74, 81-82 (2005). But Plaintiff has not asserted that "OAPA's actions were grounded in constitutionally impermissible considerations." *Jergens*, 492 F. App'x at 571 n.5. Therefore, *Dotson* is not controlling here. Plaintiff fails to state a colorable due-process claim under § 1983.

(ECF No. 10 at 5–6 (emphasis in original).)

The original Complaint's due process allegations are the same or substantially similar to his due process assertions contained in the Fourth Amended Complaint. (*Compare* original Complaint, ECF No. 4, *with* Fourth Am. Compl., ECF No. 53.) Nothing in Plaintiff's Opposition, which provides little, if any, discussion of this claim, persuades this Court that its prior decision is erroneous or is not equally applicable to the procedural due process claim raised in the Fourth Amended Complaint. Accordingly, as it relates to Plaintiff's procedural due process claim, Defendants' Motion for Summary Judgment is **GRANTED**.

## B.     Separation of Powers

Plaintiff next raises "a violation of the Separations [sic] of powers in violation of the Fourteenth Amendment to the United States Constitution[,]" seeking declaratory relief that Defendants violated "a separation of powers . . . ." (Fourth Am. Compl., PAGEID # 468.) Defendants correctly note that Plaintiff raised the same claim in his original Complaint (ECF No. 3, PAGEID # 30), which the Court previously considered and dismissed. (ECF No. 10 at 6–7.) Like his prior claim, Plaintiff does not advance any supporting factual allegations. (*See generally* Fourth Am. Compl.) Notably, Plaintiff appears to abandon this claim in his Opposition by failing to identify it when listing his other claims. (Opposition at PAGEID ## 830–31.) Moreover, as this Court previously recognized, "a separation-of-powers claim is not cognizable in federal court because 'the doctrine of separation of powers embodied in the Federal Constitution is not mandatory on the States.' *Whalen v. United States*, 445 U.S. 684, 689 n.4 (1980)." (ECF No. 10 at 6.) For all of these reasons, as it relates to Plaintiff's separation-of-powers claim, Defendants' Motion for Summary Judgment is **GRANTED**.

C.      **Equal Protection**

Plaintiff alleges that Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment when they treated him differently than similarly situated individuals and denied him parole. (*See generally* Fourth Am. Compl.)

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbids discrimination that "'burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.'" *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012) (quoting *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–682 (6th Cir. 2011)). The Equal Protection Clause prohibits only intentional discrimination. *Foster v. Michigan*, 573 F. App'x 377, 391 (6th Cir. 2014) .

Here, Plaintiff does not argue, or demonstrate, that Defendants have burdened a fundamental right. (*See generally* Fourth Am. Compl.; Opposition.) Notably, Plaintiff apparently concedes that he does not have a fundamental right to parole. (Opposition at 3–4.) This Court agrees. *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005) ("Moreover, there is no fundamental right to parole under the federal constitution."). In addition, Plaintiff, a Caucasian inmate, does not assert, or establish, a violation of the second kind, *i.e.*, that he is a member of a suspect class. "Without question, prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson*, 411 F.3d at 619 (6th Cir. 2005).

Plaintiff, therefore, asserts a violation of the third kind, *i.e.*, Defendants intentionally treated him differently than others similarly situated without any rational basis for the difference. *Loesel*, 692 F.3d at 461; *Superior Commc'ns v. City of Riverview*, No. 17-1234, 2018 WL 651382, at *10 (6th Cir. Feb. 1, 2018) (noting that an alleged violation of the third kind of

violation is a "class-of-one" violation (internal quotation marks and citation omitted)); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one[.]'"). Accordingly, the Court must decide if Defendants intentionally treated Plaintiff, a Caucasian inmate, differently than similarly situated non-white inmates, and, if so, whether there was a rational basis for Defendants' actions. *Loesel*, 692 F.3d at 461–68. In this analysis, "[c]lass-of-one claims are generally viewed skeptically" and "a plaintiff must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Id.* at 461–62 (quoting *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 791 (6th Cir. 2005)). A defendant "has no obligation to produce evidence to sustain the rationality of its actions; its choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005); *see also Davis v. Prison Health Sys.*, 679 F.3d 433, 441 (6th Cir. 2012) ("[A]ll class-of-one claims are subject to rational basis review.").

### 1. Class-of-one claims based on parole decisions

Defendants argue the Court should enter judgment in their favor on Plaintiff's equal protection claim because parole decisions fall outside of a viable class-of-one claim. (Motion at 3; Reply at 5 (citing *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 600 (2008)).) In *Engquist*, the United States Supreme Court considered a class-of-one claim in the employment context where "employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Engquist*, 553 U.S. at 604. The Supreme Court concluded that "the class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the

public employment context." *Id*. at 605. Relying on *Engquist*, Defendants contend that, like

personnel decisions in the workplace, decisions whether to grant or deny parole are inherently

subjective and therefore fall outside of a class-of-one theory. (Reply at 5.)

Defendants cite to no decisions from the United States Court of Appeals for the Sixth

Circuit to support the extension of *Engquist* to exclude class-of-one claims based on parole

decisions. Notably, however, the Sixth Circuit previously reversed a district court's *sua sponte*

dismissal of a prisoner plaintiff's equal protection claim and remanded for consideration of

whether the plaintiff stated a class-of-one claim based on purportedly arbitrary parole board

decisions. *Franks v. Rubitschun*, No. 07-1181, 312 F. App'x 764 (6th Cir. 2009). In a footnote,

the Sixth Circuit observed as follows:

> More recently, *Engquist v. Oregon Department of Agriculture* held that the
> "'class of one' theory of equal protection has no place in the public employment
> context." --- U.S. ----, 128 S.Ct. 2146, 2148-49, 170 L.Ed.2d 975 (2008). Some
> courts have read *Engquist* broadly to suggest that individualized, discretionary
> decisions can rarely, if ever, be challenged in class-of-one actions. *See, e.g.,*
> *United States v. Moore*, 543 F.3d 891, 900-01 (7th Cir. 2008); *Adams v. Meloy*,
> 287 Fed.Appx. 531, 534 (7th Cir. 2008). But *Engquist*'s holding was specifically
> limited to the public-employment context, the concerns of which the Court
> described as "unique." *Engquist*, 128 S.Ct. at 2156, 2151. And its reliance on the
> "crucial difference" between government acting as sovereign and government
> acting as employer, *id*. at 2151, suggests that *Engquist*'s discussion of
> discretionary decisionmaking should not control the case at hand.

*Id*. at *2 n.3; *see also EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 864 n.15 (6th Cir. 2012)

("We have not yet decided in a published opinion whether this reasoning should extend to other

discretionary acts. *See Franks v. Rubitschun*, 312 F. App'x 764, 766 (6th Cir. 2009). . . . We

decline to decide that issue today because even applying the traditional framework for evaluating

equal-protection claims, EJS's claim fails."); *Brown v. Chandler*, No. 5:13CV-P99-R, 2013 WL

6487505, at *2 (W.D. Ky. Dec. 10, 2013) ("However, courts have found that an equal protection

claim cannot be asserted under the class-of-one theory when a parole board's decisions are

subjective and discretionary, as they are in Kentucky.") (collecting cases); *Dawson v. Norwood*, No. 1:06-cv-914, 2010 WL 2232355, at *2 (W.D. Mich. June 1, 2010) (dismissing a prisoner plaintiff's equal protection claim under a class-of-one theory for failure to state a claim upon which relief may be granted and stating that "Plaintiff's assertion that this court is bound by *Franks v. Rubitschun*, 312 F. App'x 764 (6th Cir. 2009) is incorrect. That opinion was not published. Furthermore, the Sixth Circuit held only that the district court failed to consider the possibility that the prisoner could state a claim under a class-of-one theory").

Because Plaintiff's claim may be resolved on other grounds, the Court need not resolve this question of law at this time.

### 2. Similarly situated

The Court agrees with Defendants that Plaintiff's equal protection claim fails because he has not shown that he is similarly situated to other inmates who were granted parole. (Motion at 11–15; Reply at 2–4.) A "threshold requirement for an Equal Protection claim" is that a plaintiff provides sufficient evidence that he or she was treated differently from similarly situated persons. *Ryan v. City of Detroit*, 698 F. App'x 272, 281 (6th Cir. 2017). In order to be "similarly situated," a plaintiff must show that a comparator is similar or comparable "'in all material respects.'" *U.S. v. Green*, 654 F.3d 637, 651 (6th Cir. 2011) (quoting *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008)). However, "[w]hen evaluating whether parties are similarly situated, 'courts should not demand exact correlation, but should instead seek relevant similarity.'" *EJS Props., LLC*, 698 F.3d at 864–65 (quoting *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000)). Nevertheless, as set forth above, "a plaintiff must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel*, 692 F.3d at 461–62.

Here, Plaintiff initially identifies eight (8) inmates as comparators: William Lillibridge,

William Lanham, Richard Lawler, William Arnold, James Doan, Billy Shafer, Steven Crabtree, and Timithy Papp. (Opposition at PAGEID # 834.)[2] Plaintiff explains as follows:

> [e]ach of these inmate names submitted has been interviewed by the defendnats [sic] for parole edibility [sic] as well as for suitability consideration utilizing the same parole polices, practice & procedures, per the OAC, *supra*, however, with totally dissimilar treatment and disproportionate impositions in continuance time in years incomparable to plaintiff. Plaintiff concedes that he as well as those mentioned, *supra*, all are treated similar with respects to parole eligibility, however, Plaintiff alleges that when it comes to suitability that he is treated harsher and very dissimilar and disproportionate than those similarly situated.

(*Id*.) According to Plaintiff, these inmates (collectively, "the comparators") are similarly situated because they "have crimes very similar paralleling specific incidents to plaintiff['s] crime" and that "the crimes for which some of those inmate[s] committed are similar in nature to this Plaintiff's crime and moreover that some of the crimes committed are similar in nature to this Plaintiff's crimes[.]" (*Id*. at PAGEID ## 834, 836.)

Plaintiff's argument is not well taken. As a preliminary matter, while Plaintiff complains that he was intentionally treated differently than similarly situated non-white offenders, to the extent the attached "Appendex [sic] A" reflects an individual's race, only one of the comparators is non-white. (*See* Opposition at PAGEID ## 851 (Blankenship is Caucasian), 859 (Doan is Caucasian), 861 (Grant is African American), 865 (Lillibridge is Caucasian), 867 (Lawler is Caucasian), 869 (Jovanovich is Caucasian), 871 (Moore is Caucasian), 873 (Shafer is Caucasian), 874 (Wampler is Caucasian).) In addition, other than conclusory assertions that his comparators' crimes are similar to his own, Plaintiff fails to explain how the comparators are

---

[2] In the attachments to his Opposition, Plaintiff also apparently identifies nine (9) additional individuals as "[a]dditional supporting case similarly situated[.]" (*Id*. at PAGEID # 846 (listing Nickellia Allen, William Arnold, Boyd Blankenship, David Bowens, James Cooper, Rosalie Grant, Phil Jovanovich, Rodney Moore, and Charles Wampler.) However, Plaintiff does not discuss these individuals in any detail in his Opposition. Moreover, while Plaintiff handwrites that these individuals were released or paroled or did not have ten-year continuances or "flops," "Appendix A" contains no information about such statuses. (*See id*.)

similarly situated.  (*See generally* Opposition.)  Plaintiff refers the Court to some specific pages

in "Appendex A" attached to his Opposition (*see id*. at PAGEID # 834), but "Appendix A" totals

approximately thirty pages.  Even when reviewing the cited pages, the Court is left guessing how

that information supports Plaintiff's assertion that the comparators are similarly situated.

Plaintiff apparently assumes the Court will cobble together from the attachments evidence and

arguments to support his position.  However, "'[j]udges are not like pigs, hunting for truffles'

that might be buried in the record." *Emerson v. Novartis Pharms. Corp*., No. 09–6273, 446 F.

App'x 733, 736 (6th Cir. Aug. 23, 2011) (quoting *United States v. Dunkel*, 927 F.2d 955, 956

(7th Cir. 1991)).  Plaintiff has therefore failed to meet his burden of establishing a genuine issue

of material fact with sufficient argument supported by specific citation to the record.

However, even if the Court went on to consider Plaintiff's proffered information

regarding the comparators identified in the Opposition, Plaintiff has still failed to establish that

any of these individuals is similarly situated to him.  As a preliminary matter, Plaintiff admits

that five of the comparators are still incarcerated by ODRC and the supporting documentation

reflects that four out of the five[3] have not been released on parole.  (Opposition at PAGEID ##

835 (conceding that five inmates, including Timithy Papp, "have never been granted a parole

release"), 859 (Doan, Caucasian male, sentenced twenty years to life; next OAPB hearing set for

May, 2019), 865 (Lillibridge, Caucasian male, sentenced fifteen years to life; next OAPB

hearing set for February 2019), 867 (Lawler, Caucasian male, life sentence; next OAPB hearing

set for October 2018), 873 (Shafer, Caucasian male, sentenced twenty years to life; next OAPB

hearing set for December 2019)).  Plaintiff nevertheless insists that these comparators "have been

---

[3] Plaintiff's "Appendix A" does not attach any information regarding Timithy Papp.
Defendants represent that Mr. Papp was sentenced to ten years to life and remains incarcerated.
(Reply at 3–4 (citing https://appgateway.drc.ohio.gov/OffenderSearch).)

treated very less harsher than Plaintiff" because they "have never been treated with multiple harsh 10 year continuances."  (Opposition at PAGEID # 835.)  However, Plaintiff does not support this assertion with specific citation to the record and it is not immediately apparent to the Court how the previously cited pages in "Appendex A" support this assertion.

Even if it is true that the comparators "have never been treated with multiple harsh 10 year continuances[,]" the Court agrees with Defendants that Plaintiff and the comparators committed crimes under different circumstances.  (*See* Reply at 4.)  Plaintiff and his Co-Defendants in the criminal case resulting in Plaintiff's conviction severely burned and beat to death the five-year old victim over a period of several days.  (Imbrogno Affidavit, ¶ 8; Plaintiff's Statement to Toledo Police Department, ECF No. 67-6; Transcript of Dr. Fazeka's testimony regarding autopsy, ECF No. 67-8.)  Plaintiff was intoxicated during at least some of these occasions when he abused the victim.  (*Id*.)  As Defendants point out, Plaintiff and his Co-Defendants appear to have beaten the boy gratuitously or for entertainment purposes.  (*Id*.)  In addition, the Prosecuting Attorney of Lucas County, Ohio, "strongly oppos[ed] the release" of Plaintiff on parole.  (Letter from the office of Lucas County Prosecuting Attorney, ECF No. 67-5.)

In contrast, Plaintiff's "Appendix A" reflects that his comparators' minor victims died under different circumstances or provides too little detail for this Court to conclude that the convictions for which they were imprisoned are similar.  (*See*, *e.g.*, Opposition at PAGEID ## 847–48 (describing how Allen burned her two-year old daughter over a two-day period and strangled her), 849–50 (explaining that Arnold's eleven-month old victim died of blunt force injury to the abdomen), 851–53 (affirming Blankenship's conviction of involuntary manslaughter and child endangering where an infection, resulting from blunt force trauma to the

abdomen, caused the death of his six-month old son), 854 (affirming Bowens' conviction for murder and child endangering arising from the death of a seven-year old's repeated beatings), 855–56 (affirming Cooper's conviction for aggravated murder with specifications of kidnapping and attempted rape of twelve-year old girl), 857–58 (affirming Crabtree's conviction for murder of an infant by multiple blows to her abdomen), 859–60 (affirming Doan's convictions for murder and child endangerment arising out of the death of fifteen-month old child), 861–62 (describing how the trial court found that Grant had taken life insurance on her children and set fire to their bedroom and affirming Grant's convictions for aggravated murder and aggravated arson and affirming her death sentence), 863–64 (affirming Lanham's murder conviction for beating to death his wife's two-year old daughter), 865–66 (reflecting that Lillibridge, angry that his mistress's three-year old son wet his pants, inflicted injury on the child, resulting in the child's death), 867–68 (affirming Lawler's conviction of kidnapping and aggravated murder of eleven-year old boy and stating that Lawler was adjudged mentally ill), 871–72 (affirming Moore's murder conviction of 22-month old child where Moore used his hands to strike the victim and "the child was beaten most severely as to cause death"), 873 (reflecting that Shafer was sentenced twenty years to life for aggravated murder), 874–75 (reflecting that Wampler was sentenced twenty years to life with his next OAPB hearing in May 2023 and affirming Wampler's convictions of aggravated murder, rape, abduction, and abuse of a corpse)).

In addition to differences in the circumstances and convictions, "Appendix A" also does not reflect other facts material to a parole decision, including the comparators' prior criminal record, their conduct while incarcerated, whether there existed any recommendations by, *inter alios*, the prosecuting attorney, or any other facts material to the parole decision. O.A.C. 5120:1-1-07 (listing, *inter alia*, reasons why an inmate should not be released and listing factors the

14

parole board "shall consider" when considering release of an inmate);[4] *Brown*, 2013 WL

6487505, at *2 (citation omitted). Without this information, Plaintiff has not shown that his

comparators are similarly situated. *Cf. id.*

---

[4] O.A.C. 5120:1-1-07 provides that the parole board shall consider the following factors when deciding whether to release an inmate:

> (1) Any reports prepared by any institutional staff member relating to the inmate's personality, social history, and adjustment to institutional programs and assignments;
> (2) Any official report of the inmate's prior criminal record, including a report or record of earlier probation or parole;
> (3) Any presentence or postsentence report;
> (4) Any recommendations regarding the inmate's release made at the time of sentencing or at any time thereafter by the sentencing judge, presiding judge, prosecuting attorney, or defense counsel and any information received from a victim or a victim's representative;
> (5) Any reports of physical, mental or psychiatric examination of the inmate;
> (6) Such other relevant written information concerning the inmate as may be reasonably available, except that no document related to the filing of a grievance under rule 5120-9-31 of the Administrative Code shall be considered;
> (7) Written or oral statements by the inmate, other than grievances filed under rule 5120-9-31 of the Administrative Code.
> (8) The equivalent sentence range under Senate Bill 2, (effective July 1, 1996,) for the same offense of conviction if applicable.
> (9) The inmate's ability and readiness to assume obligations and undertake responsibilities, as well as the inmate's own goals and needs;
> (10) The inmate's family status, including whether his relatives display an interest in him or whether he has other close and constructive association in the community;
> (11) The type of residence, neighborhood, or community in which the inmate plans to live;
> (12) The inmate's employment history and his occupational skills;
> (13) The inmate's vocational, educational, and other training;
> (14) The adequacy of the inmate's plan or prospects on release;
> (15) The availability of community resources to assist the inmate;
> (16) The physical and mental health of the inmate as they reflect upon the inmate's ability to perform his plan of release;
> (17) The presence of outstanding detainers against the inmate;
> (18) Any other factors which the board determines to be relevant, except for documents related to the filing of a grievance under rule 5120-9-31 of the Administrative Code.

Plaintiff's assertion that his Co-Defendant, Phillip Jovanovich, was treated less harshly than him because Inmate Jovanovich was given "no multiple 10 yr flops" is equally unavailing. (Opposition at PAGEID # 846.)  As a preliminary matter, the cited information does not reveal whether or not Inmate Jovanovich was subject to "10 yr flops[.]"  (*See id*. at PAGEID ## 869–70.)  In addition, as with the other comparators discussed above, "Appendix A" does not provide any other facts material to a parole decision involving Inmate Jovanovich.  (*Id*.)  Notably, the record reflects that, contrary to Plaintiff's assertion that he was treated more harshly than Inmate Jovanovich, this inmate "was likewise denied parole in 2013 and will not receive another release consideration until 2023, the same year in which Inmate Solly will receive his next parole consideration."  (Imbrogno Affidavit, ¶ 20.)

Plaintiff goes on to assert that Defendants granted "releases to 1st degree murder offenders for crimes in [sic] similarly situated to plaintiff; grant releases to of [sic] offenders for crimes far more heinous in nature than this plaintiff whom is convicted for 2nd degree murder" and that Defendants granted parole to death row inmates whose sentence had been commuted to life without the possibility of parole.  (Opposition at PAGEID ## 835–36 (citing attached "Appendix B").)  Again, however, Plaintiff does not explain how each of these offenders are similarly situated to him and does not refer the Court to specific pages in the 70-page "Appendix B" to support his position.  (*See generally Opposition*; *cf. Emerson*, 446 F. App'x at 736.)  Moreover, review of "Appendix B" reveals that Plaintiff does not provide facts material to parole sufficient for this Court to conclude that those offenders are similarly situated to Plaintiff.  (*See generally* "Appendix B," attached to Opposition, PAGEID ## 876–946.)

For all of these reasons, Plaintiff has failed to show that he was treated differently than similarly situated persons.  "This total lack of comparators is fatal to [the plaintiff's] case."

*Ryan*, 698 F. App'x at 282; *see also Farnhurst, LLC v. City of Macedonia*, No. 5:13-cv-668, 2016 WL 524361, at *10 (N.D. Ohio Feb. 10, 2016) ("Failure to establish this element [that the plaintiff was intentionally treated differently than others similarly situated] is fatal to a class of one equal protection claim."). The Court therefore need not address the parties' remaining Equal Protection arguments regarding intent, rational basis, and animus. *See*, *e.g.*, *id.*; *EJS Props., LLC*, 698 F.3d at 865 (finding that it need not address whether the plaintiff can demonstrate animus or ill will because the district court properly determined that the plaintiff was not similarly situated to an alleged comparator, "the first element of an equal-protection claim[,]" and "[i]t is therefore of no consequence that the district court did not address the ill-will argument").

**D.      Retaliation**

Plaintiff alleges that Defendants denied him release on parole in retaliation for previously filing a federal civil lawsuit against other prison officials. (Fourth Am. Compl., ¶¶ 29–35; Opposition at PAGEID ## 837–41.) Defendants argue that they are entitled to judgment on this claim. For the reasons that follow, the Court agrees.

To have an actionable First Amendment retaliation claim, a claimant must establish the following elements:

> "(1) the plaintiff engaged in protected conduct; (2) and adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

*King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 2000)).

In the instant case, Plaintiff falls short of satisfying his burden to show that Defendants retaliated against him for engaging in constitutionally protected conduct.  Plaintiff bases his retaliation claim on Defendant Cholar questioning him during the parole hearing about filing a civil action against other prison officials in 1994 ("Plaintiff's prior action"):[5]

> 29.  Defendant Richard Cholar Jr. began to ask interrogative questions pertaining to a Federal Civil Suit Plaintiff had filed against London Prison Officials in 1994: the Honorable Judge S. Arthur Speigle [sic] presided over that case.

> 30.  Plaintiff reluctantly responded. Plaintiff expressed that there existed very sensitive issues that should not be addressed.

> 31.  Plaintiff mentioned that he had previously submitted both written requests as well as informal complaints requesting for all Parole Board regulations pertaining to parole suitability, any information, documents and questions that will be asked, and for Ohio Department of Rehabilitation and Correction Administrative practice, policy and procedures pertaining to parole suitability to prepare himself for any rebuttals of admissions.

> 32.  Defendant Richard Cholar Jr. continued his questions.

> 33.  Plaintiff Stated that this is the 3rd parole hearing that he has been wrongfully questioned about the Federal Civil Suit, and that he has previously complained about such.

> 34.  Defendant Richard Cholar Jr. questioned Plaintiff about a recorder and where it came from as well as about some tapes.

> > 34(b). Plaintiff was compelled to respond to the questions.

> 35.  Plaintiff affirmed that the recorder belonged to staff; that several tapes were submitted to Federal Judge S. Arthur Spiegle per in camera [sic] inspection; that Plaintiff still retained copies of those tapes; and, that Plaintiff declined to elaborate any further on these questions.

(Fourth Am. Compl., ¶¶  29–35; Plaintiff's Declaration in Opposition to Defendants' Motion for Summary Judgment, ECF No. 73, at PAGEID ## 1145–46, ¶ 8 ("Plaintiff's Declaration");

---

[5] Although Plaintiff represents that he filed his prior action in 1994, *see id*., his attachments and the Court's own docket reflects that he filed that action in May 1995. (Opposition at PAGEID ## 1042, 1045; *Solly v. Turner*, Case No. 1:95-cv-387.)

Opposition at PAGEID ## 837–41.)  While Defendants apparently deny that Defendant Cholar questioned Plaintiff about his prior action during Plaintiff's last parole hearing (*see* Imbrogno Affidavit, ¶ 16), the Court, construing the evidence in a light most favorable to Plaintiff, accepts for purposes of summary judgment that Defendant Cholar did question Plaintiff in this regard. *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011).[6]

Defendant Cholar's questioning about Plaintiff's prior action, however, is not sufficient to establish a retaliation claim.  An inmate's "pursuit of legal claims against [prison] officials . . . [is] protected conduct only to the extent that the underlying claims had merit."  *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)); *see also Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011) (same).  In Plaintiff's prior action, the docket reflects that the Court adopted the recommendation that Plaintiff's claim be dismissed and the Court concluded that an appeal would not be taken in good faith.  (Order, ECF No. 32, filed in *Solly v. Turner*, Case No. 1:95-cv-387.)  "'An appeal is not taken in good faith if the issue presented is frivolous.'"  *Silverman v. Brunsman*, No. 2:07-cv-1233, 2009 WL 4283207, at *2 (S.D. Ohio Nov. 30, 2009) (quoting *Frazier v. Hesson*, 40 F. Supp. 2d 957, 967 (W.D. Tenn. 1999) (citing *Coppedge v. United States*, 369 U.S. 438, 445 (1962))).  Because Plaintiff's prior action was frivolous, he has not shown that he engaged in protected conduct, the first prong of his retaliation claim.  *See King*, 680 F.3d at 694; *Clark*, 413 F. App'x at 812

---

[6] Having so concluded, the Court need not address the parties' dispute as to whether Defendant Imbrogno perjured himself when he averred that he did not recall OAPB members' questions during the hearing regarding Plaintiff's prior action.  (Opposition at PAGEID ## 838–39; Reply at 6–7.)  For the same reason, the Court does not address the parties' arguments regarding Defendants' admissions.  (Opposition at PAGEID # 841; Reply at 6–7.)  Moreover, the Court notes that it previously granted Defendants' request to withdraw admissions.  (Order, ECF No. 81.)

("Because [plaintiff] failed to establish that the underlying claim he was allegedly retaliated for had any merit . . . no constitutional violation occurred.").

Even if he had engaged in protected conduct, Plaintiff has not shown a causal connection between filing his prior action and his parole denial, the third required element. "[C]ausation in retaliatory claims may really be considered a two-part inquiry: A plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, *Siggers–El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005), but also (2) that the individual taking those acts was 'motivated in substantial part by a desire to punish an individual for exercise of a constitutional right,' *Thaddeus–X*, 175 F.3d at 386." *King*, 680 F.3d at 695. A claimant bears the burden of establishing that the adverse action is "motivated at least in part" by his or her protected conduct. *Id*. at 694; *Thaddeus-X*, 175 F.3d at 399 ("[T]he third element—a causal connection between the protected conduct and the adverse action—needs to be established by [claimants] to complete their affirmative case."). In this regard, "the summary judgment hurdle is not insubstantial . . . [and] bare allegations of malice would not suffice to establish a constitutional claim." *Id*. (internal quotation marks and citation omitted).

Here, Plaintiff contends that his parole hearing was continued because he filed the prior action. (Opposition at PAGEID # 840.) According to Plaintiff, his "allegations are sufficient to show that Defendant Cholar, Jr. openly addressed and considered the fact that Plaintiff had filed a federal lawsuit." (*Id*.) Plaintiff argues that "[i]nstead of being denied access to the courts, the Plaintiff was penalized for actually exercising that right" and it is "clear" that filing federal lawsuits will "place considerations towards suitability for parole at risk." (*Id*. at PAGEID ## 840–41.) However, Defendant Cholar's questions about the prior action, standing alone, is not sufficient for this Court to conclude that he, or any Defendant, was motivated by the prior action

when denying Plaintiff parole. Notably, it is not enough that Plaintiff alleges in a conclusory fashion that Defendant Cholar, or all of the Defendants, acted with a retaliatory motive when denying him parole. *See Harbin–Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)) ("[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) (citations omitted) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims. . . .").

Moreover, the protected activity, filing a federal lawsuit, occurred nearly twenty years before Defendant Cholar questioned Plaintiff about his prior action. Under these circumstances, the Court cannot conclude that Defendant Cholar's questioning was the proximate cause of the denial of Plaintiff's parole. *See*, *e.g.*, *Brown v. Brooks*, No. 2:14–cv–122, 2014 WL 3577311, at *7 (W.D. Mich. July 21, 2014) (finding that "nearly three years" between the adverse action and the protected activity is "an extended passage of time" that "is not proximate"); *cf. Alexander v. Jackson*, No. 05-73073, 2008 WL 559518, at *2 (E.D. Mich. Feb. 27, 2008) (finding that approximately two years between the adverse action and protected activity "attenuates any temporal inference of retaliation").

Finally, the record reflects that Plaintiff was denied parole because there was "substantial reason to believe that due to the serious nature of the crime," releasing Plaintiff "would create undue risk to public safety, or that due to the serious nature of the crime, the release of the inmate would not further the interest of justice or be consistent with the welfare and security of society." (OAPB Decision and Minutes, ECF No. 67-3, at 1; *cf. Harris v. Collins*, No. 2:10-CV-012, 2011 WL 832182, at *4 (S.D. Ohio Mar. 2, 2011) (finding that even if plaintiff engaged in

protected conduct by filing prior lawsuits, evidence demonstrated that the defendants would have taken the same action even in the absence of the plaintiff's protected conduct), *adopted by* 2011 WL 1627317 (S.D. Ohio Apr. 29, 2011).

In short, the present record does not establish a causal connection between Plaintiff's protected activity and the adverse action. Accordingly, because Plaintiff has failed to show that Defendants retaliated against him for engaging in protected conduct, the Court **GRANTS** summary judgment in Defendants' favor on Plaintiff's retaliation claim.

## IV.

For all of these reasons, Defendants' Motion for Summary Judgment (ECF No. 67) is **GRANTED** in its entirety.[7] The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of Defendants.

**IT IS SO ORDERED.**

>    s/Algenon L. Marbley
> Algenon L. Marbley
> United States District Judge

**DATED: February 27, 2018**

---

[7] Having concluded that there is no genuine issue of material fact on Plaintiff's claims, the Court need not address Defendants' arguments in favor of summary judgment based on the doctrine of qualified immunity.